**No. 12-17805**

---

## United States Court of Appeals
## For the Ninth Circuit

---

ZACK WARD and THOMAS BUCHAR, on behalf of
themselves and all others similarly situated,
*Plaintiffs – Appellants,*
v.
APPLE INC.,
*Defendant – Appellee*

---

On Appeal From The United States District Court
For The Northern District of California
The Honorable Yvonne Gonzalez Rogers
No. C 12-05404-YGR

---

### OPENING BRIEF OF PLAINTIFF-APPELLANT ZACK WARD

---

Francis M. Gregorek (SBN# 144785)
Rachele R. Rickert (SBN# 190634)
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

Mark C. Rifkin
Alexander H. Schmidt
Michael Liskow (SBN# 243899)
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677

Randall S. Newman (SBN # 190547)
RANDALL S. NEWMAN P.C.
37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737
Facsimile: 212-797-3172

*Counsel for Plaintiff-Appellant Zack Ward*

# TABLE OF CONTENTS

**PAGE**

I.     JURISDICTIONAL STATEMENT ....................................................1

II.    STATEMENT OF ISSUE PRESENTED FOR APPEAL ............................2

III.   STATEMENT OF THE CASE .......................................................2

IV.    STATEMENT OF FACTS ...........................................................3

  A.  The Antitrust Allegations ..................................................3

  B.  *Apple I* ...........................................................................4

  C.  *Apple II* – Former Chief Judge Ware's Rule 19 Decision.............7

  D.  The Present Action – *Apple III* ...........................................9

V.     SUMMARY OF ARGUMENT ..................................................... 10

VI.    ARGUMENT ...........................................................................12

  A.  Standard of Review................................................................12

  B.  ATTM Is Not A "Necessary" Party Under Rule 19(a) ................ 13

    1.   ATTM Need Not Be Joined As A Defendant For The Court To
         Accord Complete Relief Among The Existing Parties........................ 15

    2.   ATTM Has Not Claimed An Interest In the Litigation ......................... 19

    3.   ATTM Has No Interest That Might Be Impaired Or Impeded By A
         Judgment Against Apple........................................................ 22

      a.   Resolution Of Plaintiffs' Claims Does Not Impair
           ATTM's Interests ................................................................ 23

      b.   *Laker Airways* Is Legally Wrong And Factually Inapposite.............. 25

4. ATTM's Absence Does Not Expose Apple To Multiple Judgments Or Inconsistent Obligations ................................... 31

C. ATTM's Joinder May Not Be Feasible ......................................................... 33

D. ATTM Is Not An "Indispensable" Party Under Rule 19(b) ......................... 34

VII. CONCLUSION ................................................................................................. 39

# TABLE OF AUTHORITIES

## CASES

*Agron, Inc. v. Lin*,
No. 03-05872, 2004 U.S. Dist. LEXIS 26605,
(C.D. Cal. Mar. 16, 2004) ................................................................. 16

*Appling v. State Farm Mut. Auto. Ins. Co*.,
340 F.3d 769 (9th Cir. 2003) ........................................................... 24

*Asdourian v. Araj*,
38 Cal. 3d 276 (1985) ...................................................................... 31

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ...................................................................... 5

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*,
620 F.2d 1360 (9th Cir. 1980 ........................................................... 15

*Blumberg v. Gates*,
204 F.R.D. 453 (C.D. Cal. 2001) ...................................................... 19

*Brae Asset Funding, L.P. v. Applied Fin., LLC*,
No. C 05-02490 WHA, 2006 U.S. Dist. LEXIS 60855,
(N.D. Cal. Aug. 14, 2006) ................................................................ 22

*Brew v. City of Emeryville*,
138 F. Supp. 2d 1217, 1227 (N.D. Cal. 2001) .................................. 21

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty.*
*v. California*,
547 F.3d 962, (9th Cir. 2008) ........................................................... 13

*Clinton v. Babbitt*,
180 F.3d 1081 (9th Cir. 1999) .......................................................... 32

*Collins v. D.R. Horton, Inc*.,
505 F.3d 874 (9th Cir. 2007) ........................................................... 24

*Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*,
  417 F.3d 727 (7th Cir. 2005) ............................................................. 33

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005) ......................................................................... 5

*Dollens v. Target Corp.*,
  No. C-11-03265 RMW, 2011 U.S. Dist. LEXIS 139477
  (N.D. Cal. Dec. 5, 2011) ...................................................................... 28

*Georgia v. Pennsylvania R.R.*,
  324 U.S. 439 (1945) ................................................................... 16, 27

*Grumman Sys. Support Corp. v. Data Gen. Corp.*,
  125 F.R.D. 160, 165 (N.D. Cal. 1988) ............................................... 15

*Haas v. Jefferson Nat'l Bank of Miami Beach*,
  442 F.2d 394 (5th Cir. 1971) ............................................................. 29

*In re Am. Express Merchs. Litig.*,
  667 F.3d 204 (2nd Cir. 2012) ....................................................... 33, 38

*In re Apple & AT&TM Anti-Trust Litigation*,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) ............................................... 5

*In re Apple & AT&TM Anti-Trust Litigation*,
  826 F. Supp. 2d 1168 (N.D. Cal. 2011) .......................................... 6, 33

*In re Apple Antitrust Litigation*,
  874 F. Supp. 2d 589 (N.D. Cal. 2012) ................................................. 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,
  Sales Practices, and Prods. Liab. Litig.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) .......................................... 28, 29

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ............................................................. 8

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006) ............................................................... 39

*Laker Airways, Inc. v. British Airways, PLC*,
  182 F.3d 843 (11th Cir. 1999) ..................................................................... *passim*

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955) ........................................................................ 15

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) .............................................................. 32

*Metro. Life Ins. Co. v. O'Malley*,
  392 F. Supp. 2d 1042 (N.D. Ill. 2005)................................................... 34

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*,
  331 F. Supp. 92 (C.D. Cal. 1971) ............................................. 26, 27, 38

*Oculus Innovative Scis., Inc. v. Nofil Corp.*,
  No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288
  (N.D. Cal. Jan. 25, 2007)................................................................. 30

*Parklane Hosiery Co., Inc. v. Shore*,
  439 U.S. 322 (1979) ........................................................................ 24

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
  390 U.S. 102 (1968) ........................................................................ 12

*Robbins Music Corp. v. Alamo Music, Inc.*,
  119 F. Supp. 29 (S.D.N.Y. 1954) ......................................................... 17

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
  No. 10-17895, 2012 U.S. App. LEXIS 10862
  (9th Cir. May 29, 2012).................................................................... 13

*Schnabel v. Lui*,
  302 F.3d 1023 (9th Cir. 2002)........................................................... 13

*Shakey's, Inc. v. Covalt*,
  704 F.2d 426 (9th Cir. 1983) ............................................................. 32

*Shermoen v. United States*,
    982 F.2d 1312 (9th Cir. 1992) ............................................................. 23

*Standard Oil Co. v. Moore*,
    251 F.2d 188 (9th Cir. 1957) ....................................................... 15, 30

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
    173 F.3d 915 (4th Cir. 1999) ............................................................. 12

*Temple v. Synthes Corp.*,
    498 U.S. 5 (1990) ............................................................................. 29

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ......................................................................... 16

*Thomas, Head and Greisen Emps. Trust v. Buster*,
    95 F.3d 1449 (9th Cir. 1996) ....................................................... 19, 37

*U.S. ex rel. Morongo Band of Mission Indians v. Rose*,
    34 F.3d 901 (9th Cir. 1994) ......................................................... 22, 27

*United States v. Bowen*,
    172 F.3d 682 (9th Cir. 1999). ............................................... 13, 19, 34

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) ......................................................................... 15

*Universal Grading Serv. v. Ebay, Inc.*,
    No. C-09-2755 RMW, 2011 U.S. Dist. LEXIS 25193
    (N.D. Cal. Mar. 8, 2011) .................................................................. 22

*Valley Power Sys. v. Gen. Elec. Co.*,
    CV 11-10726 CAS (JCx), 2012 U.S. Dist. LEXIS 26228
    (C.D. Cal. Feb. 27, 2012) ................................................................. 34

*Walker Distrib. Co. v. Lucky Lager Brewing Co.*,
    323 F.2d 1 (9th Cir. 1963) ................................................................ 16

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*,
    668 F.2d 1014 (9th Cir. 1982) .......................................................... 16

# STATUTES

Clayton Act,
    15 U.S.C. § 15 .................................................................. 1, 20, 23
Sherman Act, § 2,
    15 U.S.C. § 2 ................................................................. *passim*
28 U.S.C.
    § 1291 ...........................................................................1
28 U.S.C.
    § 1332(d)(2).....................................................................1
28 U.S.C.
    § 1447(e).................................................................... 35, 36
28 U.S.C.
    § 1331 ...........................................................................1

# RULES

Federal Rules of Appellate Procedure
    4(a)(1)(A)........................................................................2

Federal Rules of Civil Procedure
    12(b)(3).................................................................... 44
    12(b)(6)......................................................................8
    12(b)(7).................................................................. *passim*
    19 ........................................................................ *passim*
    19(a)..................................................................... *passim*
    19(a)(1) .................................................................. 12
    19(a)(1)(A)............................................................... *passim*
    19(a)(1)(B)............................................................... *passim*
    19(a)(3) .................................................................. 44
    19(a)(B)(i).......................................................... 13, 26, 28
    19(a)(B)(ii)............................................................... 40
    19(b)..................................................................... *passim*
    19(b)(1) .................................................................. *passim*
    19(b)(1)(B)(i) ............................................................ 13
    19(b)(2) ............................................................... 45, 48
    19(b)(3) ............................................................ 45, 46, 48
    19(b)(4) .......................................................... 44, 45, 46, 48

9th Cir. R. 28-2.7 ...............................................................2
N.D. Cal. Civ. L. R. 7-5(b) ............................................... 7, 28

## OTHER AUTHORITIES

7 Wright & Miller, Federal Practice & Procedure, § 1623 (1986) ......................... 19

Frank H. Easterbrook, William M. Landes & Richard A. Posner,
  *Contribution Among Antitrust Defendants: A Legal and Economic
  Analysis*, 23 J.L. & Econ. 331 (1980) ............................................................. 21

## I.     JURISDICTIONAL STATEMENT

The District Court had original federal question jurisdiction pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, the Clayton Act, 15 U.S.C. § 15, and pursuant to 28 U.S.C. §§ 1331 and 1337. The District Court also had original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because sufficient diversity of citizenship exists between parties in this action, the aggregate amount in controversy exceeds $5,000,000, and there are 100 or more members of the Class.

The United States Court of Appeals for the Ninth Circuit has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final decision of the United States District Court for the Northern District of California. Pursuant to the District Court's December 17, 2012, Stipulation and Order Dismissing Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(7) (the "Dismissal Order") (Excerpts of Record ("EOR") at 3), the District Court dismissed with prejudice Plaintiffs' Class Action Complaint ("Complaint") alleging a violation of Section 2 of the Sherman Act (EOR 44). The District Court entered final judgment (the "Judgment") in Defendant's favor on December 20, 2012 (EOR 1).

On December 21, 2012, Plaintiffs timely filed their Notice of Appeal (EOR 25) from the Dismissal Order and from the Judgment pursuant to Federal Rules of Appellate Procedure 4(a)(1)(A).

## II.    STATEMENT OF ISSUE PRESENTED FOR APPEAL

The issue presented for appeal is whether the District Court erred in holding that AT&T Mobility, LLC ("ATTM") is a necessary and indispensable party that must be joined under Rule 19 in whose absence the Complaint must be dismissed under Rule 12(b)(7).

The District Court ruled on this issue in the Dismissal Order.  EOR at 8.

Rule 19 is set forth verbatim in the addendum bound to this brief pursuant to Circuit Rule 28-2.7.

## III.    STATEMENT OF THE CASE

This is a class action against Apple by two of its customers, Zack Ward and Thomas Buchar ("Plaintiffs").  Plaintiffs seek to represent all persons (the "Class") who purchased an Apple iPhone in the United States and then purchased cellular voice and data service from ATTM between October 19, 2008 and February 3, 2011 (the "Class Period").  EOR 45.  Plaintiffs allege that Apple conspired unlawfully to monopolize the iPhone voice and data service aftermarket through a number of means that forced iPhone purchasers to use ATTM for five years without their knowledge or consent.  EOR 45-46 at ¶¶ 2-4.

The District Court dismissed the Complaint on the basis that ATTM was a necessary party to the litigation, and Plaintiffs' failure to add ATTM as a party required dismissal pursuant to Rule 12(b)(7).  EOR 23.  However, ATTM is

neither a necessary nor an indispensible party under Rule 19(a) and (b).  For that reason, Plaintiffs filed this appeal from the District Court's Dismissal Order.

## IV.   STATEMENT OF FACTS

This appeal is from the third of three related class actions in the District Court which assert antitrust claims arising out of the launch of Apple's highly touted iPhone.  The undersigned counsel has represented the plaintiffs in all three cases.  The procedural histories of the related cases are described below to the extent they are pertinent to this appeal.  The facts are taken from the complaint in the instant case, which is referred to herein as "*Apple III*."

### A.    The Antitrust Allegations

Apple began selling its iPhone in June 2007.  EOR 45 at ¶ 2.  Before selling the iPhone to consumers, Apple entered into a secret agreement with ATTM that made ATTM the exclusive provider of voice and data services for the iPhone for five years (the "Exclusivity Agreement").  EOR 45 at ¶ 2.  In return for making ATTM the exclusive iPhone cellular service provider, the Exclusivity Agreement entitled Apple to share in ATTM's revenues and profits, which was an unprecedented arrangement between a cellular service provider and a cellular phone manufacturer.  EOR 45 at ¶ 2.

To enforce ATTM's exclusivity, Apple, among other things, programmed and installed software locks on each iPhone it sold that prevented the purchaser

from switching to another carrier that competed with ATTM in the cell phone voice and data services market. EOR 45 at ¶ 3. Apple then denied customers' legal right to unlock their phone by refusing to provide them with the means to do so. EOR 45 at ¶ 3. Before buying their phones, iPhone purchasers were not made aware of the fact that they would be locked into using ATTM's voice and data service five years, nor did they agree to any restraint on their freedom to choose their preferred wireless service provider. EOR 47 at ¶ 6. Because the Exclusivity Agreement locked iPhone consumers into using ATTM's services and prevented them from switching service providers in the United States, or even temporarily while traveling abroad to avoid exorbitant roaming charges, it forced them to pay supra-competitive prices for wireless services, in which Apple shared. EOR 46 at ¶¶ 4-7.

**B.    *Apple I***

In response to Apple's conspiracy to monopolize the aftermarket for iPhone voice and data services, nine Apple customers filed class actions against Apple and ATTM in the summer and fall of 2007. Those actions were consolidated before the Honorable James Ware under the consolidated caption, *In re Apple AT&TM Anti-Trust Litig.*, No. C 07-05152-JW (N.D. Cal.) ("*Apple I*"). The plaintiffs in *Apple I* asserted, *inter alia*, claims under § 2 of the Sherman Act, 15 U.S.C. § 2, stemming from Apple's aforementioned conduct and its parallel monopolization of

- 4 -

the aftermarket for software applications for the iPhone. *Id.,* Revised Consolidated Am. Class Action Compl., ECF No. 109 (June 4, 2008).

On October 1, 2008, the District Court denied Apple's motion to dismiss the antitrust claims. *Apple I*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008). On March 4, 2009, the District Court denied ATTM's motion to dismiss the antitrust claims asserted against it. *Apple I,* ECF No. 187. On July 8, 2010, the District Court certified the Class as to the antitrust claims. *Apple I*, 2010 U.S. Dist. LEXIS 98270, at *52 (N.D. Cal. July 8, 2010).

In its October 1, 2008 decision, the District Court also denied a motion by ATTM to compel arbitration, citing the California rule invalidating class action waivers in arbitration agreements set forth in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005). *See Apple I*, 596 F. Supp. 2d at 1299. Following the U.S. Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), holding that the "*Discover Bank* rule" invalidating class waivers in some instances was preempted by the Federal Arbitration Act, ATTM renewed its motion on August 1, 2011, and – despite having its own agreements with iPhone consumers that required them to sue Apple in court in California – Apple moved to compel arbitration under ATTM's arbitration agreement on that same date. *See Apple I*, ECF Nos. 504, 514, respectively.

On December 1, 2011, the District Court granted both ATTM's and Apple's motions to compel arbitration in *Apple I* and decertified the Class on that basis. *Id.*, 826 F. Supp. 2d 1168, 1179 (N.D. Cal. 2011). Even though Apple's own contract with iPhone customers has always included a forum selection clause requiring customers to sue Apple in court in California, the District Court compelled the nine named plaintiffs in *Apple I* to arbitrate their claims against Apple as well as ATTM based on the arbitration clause in ATTM's wireless service contract, finding that those plaintiffs were equitably estopped from suing Apple under its own forum selection clause because their antitrust claims against Apple were "intertwined" with ATTM's service contract. *Id.* at 1178.[1] The nine plaintiffs were directed to arbitrate their individual claims in separate arbitrations in their home counties throughout the country. None of the nine plaintiffs have commenced arbitration because it is prohibitively expensive for them to prosecute individual, expert-intensive § 2 of the Sherman Act aftermarket monopolization claims in light of fact that their individual damages are only a few thousand dollars each.[2]

---

[1]  The District Court certified its order compelling arbitration for interlocutory appeal, *Apple I.*, 2012 U.S. Dist. LEXIS 16505 (N.D. Cal. Feb. 1, 2012), but this Court denied permission to appeal on April 27, 2012, *id.*, ECF No. 570.

[2]  The District Court declined to adopt the Second Circuit's decisions in *In re Am. Express Merchs. Litig.*, 554 F.3d 300 (2009), 634 F.3d 187 (2011), 667 F.3d 204 (2012) ("*Amex*"), which voided an arbitration clause where the antitrust

### C. *Apple II* – Former Chief Judge Ware's Rule 19 Decision

On December 29, 2011, a new group of Apple customers filed new class action complaints, which were consolidated by then-Chief Judge James Ware under the Consolidated caption *In re Apple iPhone Antitrust Litigation*, No. C 11-06714-YGR (N.D. Cal.) ("*Apple II*"). The new case was brought only against Apple, alleging similar violations of the Sherman Act to those in *Apple I*. *Apple II*, ECF No. 1. On April 16, 2012, Apple moved to dismiss under Rule 12(b)(7) for failure to join ATTM as a purported necessary party under Rule 19. *Id.*, ECF No. 37. Apple also sought dismissal under Rule 12(b)(6). EOR at 37.[3] Then, on May 14, 2012, Apple moved to compel arbitration under ATTM's wireless services agreement. *Apple II*, ECF No. 48. Apple argued in its motion to compel that the plaintiffs in *Apple II* should be equitably estopped from avoiding arbitration against Apple under ATTM's contract for the same reasons the plaintiffs were estopped in *Apple I*.

The District Court denied Apple's motion to compel arbitration, finding that Apple failed to "satisfy both requirements to invoke the doctrine of equitable

---

plaintiffs could not afford to effectively vindicate their rights in arbitration. *Apple I*, 826 F. Supp. 2d at 1174-75. The Supreme Court heard oral argument in *Amex* on February 27, 2013.

[3] The parties' briefs on the dismissal motion in *Apple II* are included in the record on this appeal in accordance with the District Court's Dismissal Order. EOR at 9-10.

estoppel" because, unlike in *Apple I*, the plaintiffs in *Apple II* had pled their voice and data aftermarket violation claim against Apple without "intertwining" it with ATTM's wireless service agreement. *Apple II*, 874 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012).[4]

In support of its Rule 12(b)(7) motion, Apple argued that ATTM had an interest in the action that it was unable to protect if it were not joined as a party. However, Apple submitted nothing in support of its argument other than a half-page declaration from ATTM's former outside counsel in *Apple I*, Shari Ross Lahlou, ("Lahlou") which stated only that "ATTM is aware of this litigation" and "has an interest in this case, since the Consolidated Complaint alleges that ATTM is a monopolist and makes various allegations regarding the service ATTM provides to ATTM customers using iPhones (for example, allegedly imposing excessive international roaming charges)." EOR at 82 at ¶2. More importantly, Lahlou admitted that ATTM had no interest in becoming a party in *Apple II*, but instead **preferred** to protect any interest it had in the action through arbitration: "ATTM has not intervened in this suit because, given the ruling in [*Apple I*], any such claims must be arbitrated. If ATTM were to be joined to this litigation,

---

[4]     The District Court's decision denying Apple's motion to compel is consistent with this Court's subsequent decision in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1132-34 (9th Cir. 2013).

ATTM would move to compel arbitration as it successfully did in [*Apple I*]." EOR at 82 at ¶ 3.

On July 11, 2012, shortly before he retired, Chief Judge Ware granted in part Apple's motion to dismiss and denied Apple's motion to compel arbitration without prejudice. EOR at 22-24. The District Court concluded that ATTM was a necessary party to the claim that Apple conspired to monopolize the aftermarket for iPhone voice and data services because the Court would have to "evaluat[e] ATTM's conduct" to assess the plaintiffs' antitrust claims against Apple, which "would necessarily implicate the interests of ATTM." EOR at 20. The District Court ordered that the claim would be dismissed if the plaintiffs did not add ATTM as a defendant in an amended complaint. EOR at 23, n. 29.[5]

The plaintiffs in *Apple II* declined to add ATTM as a defendant and elected, instead, to drop their voice and data claim and prosecute only their applications aftermarket monopolization claims in that case. *Apple II*, ECF No. 81.

## D.     The Present Action – *Apple III*

On October 19, 2012, Zack Ward and Thomas Buchar commenced this class action against Apple, *Ward v. Apple Inc.*, C 12-05404-YGR (N.D. Cal.), asserting

---

[5]      The District Court explained that "[t]his Order is not intended to *require* that Plaintiffs maintain claims based on an alleged voice and data services aftermarket. Instead, it holds that insofar as Plaintiffs wish to maintain such claims, ATTM must be added as a party." EOR at 23 n.29 (emphasis in original).

a single claim that Apple conspired to monopolize the iPhone voice and data service aftermarket – the same claim that had been dismissed in *Apple II*. *Apple III*, ECF No. 1. The case was related to *Apple II*, and both cases were assigned to the Honorable Yvonne Gonzalez Rogers, United States District Court Judge. Instead of re-litigating whether ATTM was a necessary party, which had been decided against the plaintiffs in *Apple II*, the parties in *Apple III* stipulated to submit the *Apple II* briefs on that issue and pertinent record to Judge Gonzalez Rogers and agreed that the District Court should grant Apple's motion to dismiss based on Chief Judge Ware's decision in *Apple II,* if it decided to follow that decision. EOR at 3. On December 17, 2012, the District Court issued the Dismissal Order. EOR at 7. The District Court entered judgment on December 20, 2012, EOR at 1, and Plaintiffs appealed the next day. EOR at 25.

## V.    SUMMARY OF ARGUMENT

The District Court failed to apply the correct legal standard under Rule 19. A complaint cannot be subject to the drastic remedy of dismissal under Rule 12(b)(7) simply because a court may be required to "evaluate the conduct" of an unnamed antitrust co-conspirator. Otherwise, virtually all co-conspirators would be "necessary parties" in *every* antitrust case alleging a conspiracy. The well-settled law is directly to the contrary: antitrust plaintiffs always may sue any conspirator and obtain complete relief from that lone defendant, regardless of the

role of other conspirators in the antitrust violation. On the facts of this case, the District Court's decision cannot stand in light of that well-settled law.

Under the correct Rule 19(a) standard, ATTM is not a necessary party to this action under either sub-part of Rule 19(a)(1). *First*, ATTM is not necessary under Rule 19(a)(1)(A) because the court can fashion "complete relief among" the Plaintiffs and Apple since, by law, any antitrust conspirator is fully liable for 100% of the damages caused by the conspiracy. In addition, as a well-settled matter of antitrust law, Apple has no claim for indemnification or contribution against its co-conspirator ATTM.

*Second*, ATTM has not claimed any interest relating to the subject of the action that it cannot protect as a non-party, and Apple has no standing to claim an interest on ATTM's behalf. Under Rule 19(a)(1)(B), only "***that person***" who has the interest may claim it (emphasis added). Even if Apple could claim ATTM's interest in the action, the half-page, inadmissible hearsay declaration from ATTM's former outside counsel failed to identify any interest that ATTM would, as a practical matter, be unable to protect unless it were joined as a party to this action. To the contrary, according to the Lahlou declaration, ATTM preferred to remain a non-party: "if joined, ATTM would seek dismissal in favor of arbitration under the terms of its wireless service agreement". EOR at 82, ¶ 2. Thus, ATTM is not a necessary party under Rule 19(b)(1)(B)(i).

Under Rule 19(a)(1)(B)(ii), Apple did not establish that it was subject to a substantial risk of double, multiple, or inconsistent obligations absent ATTM's joinder, given the rule that bars an antitrust conspirator from seeking indemnification or contribution from any of its co-conspirators. If ATTM is found liable and pays damages in another case for having conspired with Apple to monopolize the iPhone voice and data service aftermarket, ATTM would have no recourse against Apple.

Thus, ATTM is not a necessary party in this case. Even if ATTM were a necessary party, however, it is not an indispensable party under Rule 19(b). Since Plaintiffs can recover 100% of their damages from Apple, which has no cognizable claim for indemnification or contribution against ATTM, no present party is or can be prejudiced by ATTM's absence.

The District Court's Dismissal Order granting Defendant's motion therefore should be reversed and Plaintiffs' complaint reinstated.

## VI.    ARGUMENT

### A.    Standard of Review

Dismissal for failure to join a necessary or indispensible party "is a drastic remedy . . . which should be employed only sparingly." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

Under Rule 19, the Court must first determine whether the absent party is "necessary." *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). If the absent party is not necessary, the inquiry ends and the motion to dismiss should be denied. *Schnabel v. Lui*, 302 F.3d 1023, 1031 (9th Cir. 2002) (if absent party is not "necessary" under Rule 19(a), "it cannot be indispensable under Rule 19(b)"). If the absent party is "necessary," the Court then must determine whether joinder is feasible. *Bowen*, 172 F.3d at 688 (citing Rule 19(a) & (b)). "Finally, if joinder is not feasible, the Court must decide whether the absent party is indispensable, *i.e.*, whether in 'equity and good conscience,' the action can continue without [it]." (citing Rule 19(b)).

This Court "review[s] a Rule 19 dismissal for abuse of discretion and underlying legal conclusions *de novo*." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, No. 10-17895, 2012 U.S. App. LEXIS 10862, at *6 (9th Cir. May 29, 2012) (citing *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 969-70 (9th Cir. 2008)).

## B. ATTM Is Not A "Necessary" Party Under Rule 19(a)

The drastic remedy of dismissal for failure to join a party is subject to a strict standard that is difficult to meet. A party is "necessary" under Rule 19 ***only*** (A) when complete relief is not possible in its absence, ***or*** (B) when the absent party claims a legally protected interested in the action ***and*** the absent party is "so

situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A) & (B).

Chief Judge Ware erred by applying a far more lenient standard than Rule 19 requires. Despite recognizing the general rule that all joint tortfeasors need not be named as defendants, (EOR at 20), the District Court misapplied Rule 19 by adopting a standard that would render "necessary" any party whose interests were "substantially implicated" by the litigation: "if a plaintiff's antitrust claims require a court to evaluate the conduct of an absent party that is alleged to be an antitrust co-conspirator with a defendant, thereby 'substantially implicating [the] interests' of that party, the absent party is necessary pursuant to Rule 19(a)." EOR at 20 (quoting *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999)). After articulating its erroneous standard, the District Court, with scant analysis, concluded that ATTM's interests were "substantially implicat[ed]" and did not consider **any** of the Rule 19 requirements to finding it a "necessary" party. EOR at 20.

As shown below, the District Court's incorrect ruling that ATTM was a necessary party was based almost entirely upon its erroneous reliance on the

Eleventh Circuit's facially inapposite *Laker Airways* case. Moreover, the District Court erred by failing to consider the threshold question of whether ATTM even claimed a legally protected interest in the action, which it did not. Rule 19(a)(1)(B). Accordingly, this Court should reverse the District Court's erroneous conclusion based upon its misinterpretation of the legal standard under Rule 19(a), and hold that ATTM is not a necessary party in this action.

### 1. ATTM Need Not Be Joined As A Defendant For The Court To Accord Complete Relief Among The Existing Parties

Under binding U.S. Supreme Court and Ninth Circuit law, all antitrust conspirators are liable for the acts of their co-conspirators. *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 253-54 (1940) (antitrust conspirators are liable for the acts of their co-conspirators); *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) (citing *Socony-Vacuum*, 310 U.S. at 253-54); *El Ranco, Inc. v. First Nat'l Bank*, 406 F.2d 1205, 1216 (9th Cir. 1968); *Standard Oil Co. v. Moore*, 251 F.2d 188, 211 (9th Cir. 1957).

For that reason, "antitrust co-conspirators … are ***not*** indispensable parties to [an] antitrust action under Rule 19." *Grumman Sys. Support Corp. v. Data Gen. Corp*., 125 F.R.D. 160 (N.D. Cal. 1988) (emphasis added) (citing *Lawlor v. Nat'l Screen Serv. Corp*., 349 U.S. 322 (1955); 7 Wright & Miller, Federal Practice & Procedure § 1623, at 346-48 (1986)). Thus, it is indisputable that an antitrust

plaintiff may sue only one co-conspirator and recover all of his damages caused by the conspiracy from that lone defendant. *Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 436 (1945); *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*, 668 F.2d 1014, 1053 (9th Cir. 1982) (plaintiff "not required to sue all of the alleged conspirators inasmuch as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy") (citation omitted); *Walker Distrib. Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 8 (9th Cir. 1963) ("plaintiff need not sue all conspirators; he may choose to sue but one") (citation omitted); *Agron, Inc. v. Lin*, No. 03-05872, 2004 U.S. Dist. LEXIS 26605, at *40 n.78 (C.D. Cal. Mar. 16, 2004) ("plaintiff is not required to name all co-conspirators when bringing suit") (citing *William Inglis & Sons*, 668 F.2d at 1052-53).

This principle is firmly grounded in the deterrence purposes of the antitrust laws, and has consistently been credited as being essential to deterring antitrust violations. *See*, *e.g.*, *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("the Sherman Act and the provision for treble-damages actions under the Clayton Act were not adopted for the benefit of participants in a conspiracy to restrain trade. . . .  [T]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."); Frank H. Easterbrook, William M. Landes & Richard A. Posner, *Contribution Among Antitrust Defendants: A Legal and Economic Analysis*, 23 J.L.

& Econ. 331 (1980) (explaining how no-contribution rule for antitrust co-conspirators increases deterrence).[6]

In light of this overwhelming authority, Apple did not dispute in the District Court that it is unnecessary to join ATTM for the Court to fashion complete relief between the parties. *See* EOR at 63. ("The joint and several liability of co-conspirators is only relevant to the issue of whether a plaintiff can obtain complete relief, under Rule 19(a)(1)(A))."

Simply put, when, as here, such "joint and several liability exists, the plaintiff has the ***privilege of selecting his defendant***." *Robbins Music Corp. v. Alamo Music, Inc.*, 119 F. Supp. 29, 31 n.6 (S.D.N.Y. 1954) (emphasis added). There are, of course, myriad reasons why an antitrust plaintiff may choose to sue only one or fewer than all co-conspirators in an antitrust conspiracy. One or more of the defendants may be bankrupt or otherwise unable to satisfy a judgment. The plaintiff may have an ongoing business relationship with one of the conspirators, may have agreed not to sue a co-conspirator in exchange for cooperation in the ensuing litigation, or may wish to avoid the cost of having to litigate against multiple defense counsel. One of the co-conspirators may be a foreign corporation

---

[6] If a named antitrust defendant could compel joinder of a co-conspirator under Rule 19, that would undermine the deterrent effect of the non-contribution law by potentially shifting some liability to the co-conspirator after it is added as a party, whereas the only named defendant would be liable for the full measure of damages if the non-party co-conspirator was not added as a defendant.

over which there is no personal jurisdiction. Or (as in this case) the plaintiffs may wish to avoid being ordered to arbitrate their antitrust claims against a co-conspirator when they cannot afford to do so. In any of these situations, or even if there is no observable reason at all, the plaintiff has "the privilege of selecting his defendant." *Id*.

In this case, Plaintiffs exercised the privilege of selecting Apple as their only defendant to avoid having to arbitrate their individual antitrust claims – which is economically unfeasible for any of them. If Apple is found liable for conspiring with ATTM to monopolize the voice and data service aftermarket in exchange for a share of ATTM's revenue on such service, Plaintiffs can and will recover all of their damages from Apple alone, and they are not required to name ATTM as a defendant to obtain complete relief.

Moreover, Apple has no claim for indemnification or contribution against its co-conspirator ATTM. *See Tex. Indus.*, 451 U.S. at 638-47 (federal courts have refused to imply right of contribution among antitrust violators under Sherman Act or Clayton Act). Apple has never argued otherwise. Thus, it is unnecessary to join ATTM to accord any relief to Apple.

There is, and can be, no dispute that the Court can accord complete relief among the parties already before it. Therefore, Rule 19(a)(1)(A) does not require joinder of ATTM.

### 2.    ATTM Has Not Claimed An Interest In the Litigation

Under Rule 19(a)(1)(B), a non-party may be necessary if:

> ***that person*** claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(emphasis added). When determining if a non-party must be joined under Rule 19(a)(1)(B), the first question to be considered is whether the non-party itself "claims an interest relating to the subject of the action." *Id.* If that threshold is not met, the analysis under Rule 19(a)(1)(B) is complete and no joinder should be made. *Bowen*, 172 F.3d at 689 ("Joinder is contingent … upon an initial requirement that the ***absent party claim*** a legally protected interest relating to the subject matter of the action.") (emphasis added and in original). In *Bowen*, this Court expressly held that joinder is not necessary where the absent party is aware of action and chooses not to claim an interest. *Id.  See also Thomas, Head and Greisen Emps. Trust v. Buster*, 95 F.3d 1449 (9th Cir. 1996) (absent party not indispensable because it "had not claimed an interest in [the defendant's] limited partnership interest at the time of the default judgment"); *Blumberg v. Gates*, 204 F.R.D. 453, 455 (C.D. Cal. 2001) ("[T]he Court believes that it should, consistent with Rule 19, respect the decision of the absent parties, who have never claimed an

interest in the present litigation, to remain on the sidelines since doing so will not prejudice the [absent party].").

That is precisely ATTM's decision here. As the Lahlou Declaration demonstrates, ATTM is aware of this action and has deliberately chosen not to seek to intervene. EOR 82 ¶¶ 2-3. Indeed, ATTM has no desire to become a party to the action, to protect its interests or otherwise. According to the Lahlou Declaration, if ATTM were joined as a party, it would seek immediately to be dismissed in favor of arbitration. EOR 82 ¶¶ 2-3.

Apple is the only party who claims that ATTM has an interest in the action that ATTM cannot protect unless it is joined. But to be sure, Apple is not concerned with ATTM's ability to protect ATTM's interest. Rather, Apple – having chosen to require its own customers to sue it only in court in California and hoping to avoid the consequence of its own contract – seeks to join ATTM solely to avail itself of ATTM's arbitration clause, not to protect ATTM.

Under this Court's binding precedent, Apple's motion Rule 12(b)(7) motion to dismiss for failure to join a necessary party should have been denied because ATTM chose not to claim an interest in the action. Judge Ware failed to address this fundamental predicate issue in the District Court's July 11, 2012 decision, and instead vaulted directly to a purely subjective (and wholly conclusory) analysis of whether ATTM's interests were "substantially implicated" under section

19(a)(1)(B)(i).  *See* EOR at 21; discussion *supra* at Section VI.B.  For this reason alone, the Dismissal Order should be reversed.

Putting aside that the Lahlou Declaration actually disclaims that ATTM has asserted an interest in this case, the declaration – the only evidence Apple submitted to try to demonstrate ATTM's supposed interest – is inadmissible. Plaintiffs urged the District Court to strike the declaration pursuant to Civil Local Rule 7-5(b) because it improperly makes various statements concerning ATTM's knowledge, intent, and motive (EOR at 67, n. 4) without providing a proper foundation.  Lahlou is not an ATTM witness – she was outside counsel for ATTM in *Apple I*.  EOR at 82, ¶ 1.  As such, she is in no position to claim personal, first-hand knowledge of ATTM's interests in this case.  "It is not sufficient for the declarant to state that he or she has personal knowledge of the facts stated.  Rather, the declarant must state facts showing his or her connection to the matters stated, establishing the source of the information."  *Brew v. City of Emeryville*, 138 F. Supp. 2d 1217, 1227 (N.D. Cal. 2001) (striking declaration).  Despite claiming personal knowledge of ATTM's interests and intent, Lahlou did not establish the source of her personal knowledge.[7]

---

[7]  In the District Court, Apple did not deny that Lahlou's declaration constituted hearsay.  Nor did Apple offer a declaration from a knowledgeable ATTM witness.  Chief Judge Ware did not rule upon Plaintiffs' application to strike the declaration as improper hearsay.  *See* EOR at 67 n. 4..

The other statements in the Lahlou Declaration are merely her conclusions, opinions, and legal argument, which should be stricken as well. *See Universal Grading Serv. v. Ebay, Inc*., No. C-09-2755 RMW, 2011 U.S. Dist. LEXIS 25193 (N.D. Cal. Mar. 8, 2011) (striking declaration pursuant to Civil Local Rule 7-5(b) because it "contains numerous legal conclusions and arguments and lacks proper foundation"); *Brae Asset Funding, L.P. v. Applied Fin., LLC*, No. C 05-02490 WHA, 2006 U.S. Dist. LEXIS 60855, at *16 (N.D. Cal. Aug. 14, 2006) (striking declaration as "full of legal argument and conclusions by the hearsay declarant … an attorney for [the defendant], in violation of Civil Local Rule 7-5(b)").

In sum, as this Court held in *U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994), it is "inappropriate for one defendant to attempt to champion [the] absent party's interests" when, as here, the absent party "did not feel that it was necessarily in his interest to [be] a party in this action." Accordingly, this Court should conclude that Rule 19(a)(1)(B) has not been met.

### 3. ATTM Has No Interest That Might Be Impaired Or Impeded By A Judgment Against Apple

Although the Court need not reach the question whether ATTM's absence may "as a practical matter impair or impede [its] ability to protect" any interest in the litigation under Rule 19(a)(B)(i) since ATTM has not claimed to have an interest it is impaired from protecting, ATTM in fact has no legally protected interest that could be impaired by a judgment against Apple.

- 22 -

As an initial matter, the District Court's failure to identify ATTM's legally protected interest or to determine how ATTM's interest might be impaired alone warrants reversal. *See Salt River*, 2012 U.S. App. LEXIS 10862, at *10-11 ("'If a legally protected interest exists, the court must further determine whether that interest will be ***impaired or impeded*** by the suit.'") (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (emphasis in original)). The District Court merely stated that ATTM had an interest, without specifying the interest or discussing how it might be impaired or impeded by the disposition of this action in ATTM's absence. *See* EOR at 22.

In any event, ATTM has no legally protected interest that can be impaired or impeded by this action. None of Apple's arguments below as to why ATTM's interests were threatened are valid.

### a. Resolution Of Plaintiffs' Claims Does Not Impair ATTM's Interests

The District Court's circular reasoning that "an evaluation of ATTM's conduct would necessarily implicate the interests of ATTM, which means that ATTM is a necessary party pursuant to Rule 19(a)," EOR at 20, does not withstand scrutiny because ATTM has no interest that is legally protectable under the Rule.

If ATTM is found to have conspired with Apple in this case, neither Plaintiffs nor any other iPhone consumer will be able to use that finding to prejudice ATTM in a separate action or arbitration. Neither *res judicata* nor

collateral estoppel can be used against ATTM in a subsequent proceeding based upon this litigation **because ATTM is not a party**.[8]   And, of course, a judgment against Apple in this case will fully satisfy their claims, leaving no claim remaining against ATTM.  For these reasons, ATTM is much better off remaining a non-party to this action.

Moreover, Apple itself has no right of contribution or indemnification against ATTM, so it will not be able to use an adverse determination here in a subsequent claim against ATTM.  *See Tex. Indus.*, 451 U.S. at 638-47 (neither Sherman Act nor Clayton Act confers right of contribution among antitrust violators).  Apple never has argued otherwise.

Rather than being impeded or impaired, ATTM's interests are **better** served by **not** being a defendant in this action since Plaintiffs will recover all of their damages from Apple and *ATTM* will essentially become immune to any later suits by the Class.  Recognizing the obvious advantage to remaining a non-party, ATTM has not sought to intervene.  And were it added as a party, ATTM assuredly would seek immediately to be dismissed in favor of arbitration.

---

[8]    Traditional *res judicata* and collateral estoppel require the same parties or their privies in both actions.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979).  Offensive and defensive non-mutual collateral estoppel require that the party being estopped must have litigated and lost the issue in a prior action.  *Id.*; *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).

### b. *Laker Airways* Is Legally Wrong And Factually Inapposite

The District Court's reliance on *Laker Airways* was entirely misplaced. Even the Eleventh Circuit itself recognized that its decision was driven by the unique facts of that case. The plaintiff in that case alleged a conspiracy to monopolize airport take-off and landing slots at British airports. After noting the well-settled rule that joint tortfeasors do not need to be joined in one lawsuit, the Eleventh Circuit concluded that the particular non-party in that case, a company ("ACL") appointed by the British government to coordinate the take-off and landing slots, had unique interests that were "more significant than those of a routine joint tortfeasor." *Laker Airways*, 182 F.3d at 848. ACL's continued existence as a business was predicated on maintaining its "neutrality" in coordinating the airport slots, and the Eleventh Circuit found that ACL would have lost its government appointment if the court ruled that ACL had compromised its neutrality by participating in an antitrust conspiracy. ACL, thus, was found to be a necessary party because an adverse decision would put it out of business.

A judgment against Apple would pose no similar existential or even substantial threat to ATTM, whose interest in this case is at most no greater than that of a "routine joint tortfeasor." The District Court made no finding as to how any threat to ATTM through this litigation would be in any way as extraordinary as that in *Laker Airways*. The two cases are as factually inapposite as cases can be.

- 25 -

Were this Court to affirm the District Court's decision in this case, the outlier decision in *Laker Airways* – admittedly based on the exceptional facts of that case – would swallow the general rule and undo more than 70 years of Supreme Court and Ninth Circuit precedent holding that antitrust co-conspirators need not be joined as defendants in the same action and undermine the deterrence purposes of the antitrust laws. *See* Section VI.B.1., *supra*. For this reason alone, the Dismissal Order should be reversed.

The District Court adopted the exceptional rule from *Laker Airways* because the Eleventh Circuit had "relied upon a decision from the Ninth Circuit" and, in its view, "several other district courts within the Ninth Circuit have recently cited with approval the rule enunciated in *Laker Airways*." EOR at 21. But each of those cases found that joinder was necessary only as to claims *other than* antitrust claims. The District Court failed to recognize that antitrust claims are different than other types of joint liability claims because of the unique rules that apply in antitrust cases making each conspirator 100% liable and barring indemnification and contribution claims against co-conspirators.

In any event, none of the cases cited by the District Court actually supports the relaxed Rule 19 standard adopted by the Eleventh Circuit in *Laker Airways*. For example, *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92 (C.D. Cal. 1971) (*per curiam*) cited by the District Court at EOR 21 n. 24,

involved breach of contract claims seeking damages and injunctive relief as well as antitrust claims.  *See Occidental,* 331 F. Supp. at 95.  As to the antitrust claims, the district court held correctly in *Occidental* that "antitrust co-conspirators need not be joined" because of joint and several liability in such claims.  *Id.* at 105-06 (citing *Pennsylvania R.R.*, 324 U.S. at 463 (other citation omitted).  But the district court then held that the rule of non-joinder in antitrust cases did not apply to the contract claims: "these principles must be applied in context.  In the present case, Sharjah's status as a joint tortfeasor would not as a practical matter negate its status as a contractual party, with interests that are covered by Rule 19(a)."  *Occidental,* 331 F. Supp. at 106.  The district court concluded that the non-party was necessary under Rule 19 because *Occidental* had asserted contract claims; its decision adhered to the basic rule that joinder of antitrust co-conspirators is not necessary.

Moreover, in *Occidental*, the district court conducted a proper Rule 19 inquiry, finding both that the absent party's ability to protect its contractual interests could be impaired by the lawsuit and that that named defendants could be subject to inconsistent obligations if the absent party were not joined.  *Id.* at 105. Still, even after reaching those findings, the court concluded that the absent party was "not an 'indispensable' party to this case" and refused to dismiss the action. *Id.* at 106.  Thus, *Occidental* does not remotely support the weakened Rule 19

"implication of interests" test that was created from whole cloth in, and applied under the unique facts of, *Laker Airways*.

*Dollens v. Target Corp.*, No. C-11-03265 RMW, 2011 U.S. Dist. LEXIS 139477 (N.D. Cal. Dec. 5, 2011), cited by the District Court at EOR 21 note 25, was a slip-and-fall case that was ***not decided under Rule 19*** but, rather, under the less restrictive standard of 28 U.S.C. § 1447(e). Indeed, the district court expressly acknowledged that it was applying a different standard in that case: "While [the absent party] ***may not be strictly necessary as a party***, however, courts have found that amendment under § 1447(e) is a ***less restrictive standard*** than Rule 19 and joinder may be permitted where the proposed defendant is closely related to the cause of action." *Id*. at *4 (emphasis added) (citation omitted). The District Court permitted the plaintiff to join the employee under that less restrictive standard. *Id*. at *7. Apple has not moved under section 1447(e), and its Rule 19 motion was not determinable under that less restrictive, inapplicable standard.

Finally, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011), also cited in footnote 25 of the District Court's opinion, EOR 21, arose in a product liability and deceptive marketing case, ***not*** an antitrust case. The defendants, domestic Toyota entities, whom the plaintiffs did not even argue were joint tortfeasors, moved to dismiss in the absence of Toyota's foreign subsidiary or affiliated entities

(over which the court lacked jurisdiction). The district court found that the foreign entities were necessary parties because they, **not** the domestic defendants, were responsible for the design, manufacture, repair, and marketing of the allegedly defective vehicles. *Id*. at 905. The court could not accord the plaintiffs complete relief because the domestic parent could not be held liable for the actions of the absent foreign subsidiary or affiliates. *Id*. at 906. Joint tortfeasor liability was not even an issue in that case. There is no corporate relationship between Apple and ATTM: they are co-conspirators and joint tortfeasors. Because Apple can be held liable to Plaintiffs for the full amount of their damages and has no claim for indemnification or contribution against ATTM, the Court can grant complete relief between the parties already before it here.

Importantly, *Laker Airways* based its holding on the "active participant" exception to the joint tortfeasor rule from *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394 (5th Cir. 1971), which suggests that an absent joint tortfeasor can be considered a necessary party when it "'emerges as an active participant' in the allegations." *Laker Airways*, 182 F.3d at 848 (quoting *Haas*, 442 F.2d at 398).[9]

As Apple conceded below, this Court never has recognized the "active participant"

---

[9]    This Court should continue not to recognize the "active participant" rationale because it is a court-made doctrine that is inconsistent with the plain language of Rule 19 and it is irreconcilable with *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990), wherein the Supreme Court reaffirmed the inviolability of the joint tortfeasor rule in the Rule 19 context.

exception to the general rule, and nor has a district court within the Ninth Circuit in an antitrust case. *See* EOR at 71 n. 4 (citing *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288, at *7-8 (N.D. Cal. Jan. 25, 2007). In *Oculus*, the district court denied a Rule 19 motion because, according to the Advisory Committee Notes to Rule 19(a), "'a tortfeasor with the usual "joint-and-several" liability is merely a ***permissive*** party to an action against another with like liability.'" *Oculus*, 2007 U.S. Dist. LEXIS 8288, at *7 (emphasis added) (citing *Temple,* 498 U.S. at 7). In an antitrust case such as this, where one co-conspirator is fully liable for all the harm caused by the conspiracy regardless of its degree of participation, it makes no difference whether the absent party was an "active participant" or not.

This Court should reject the "active participant" exception because it is wholly inconsistent with the binding *Temple* rule. An antitrust co-conspirator is by definition an "active participant" in the conspiracy, so such a rule would eviscerate the longstanding principle that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." Rule 19(a) adv. comm. n.

Moreover, Apple was not "inactive" in the antitrust conspiracy. It agreed to enforce ATTM's exclusivity by "locking" iPhones to the ATTM network, and and by withholding "unlock" codes from iPhone consumers who wished to change

carriers. EOR at 56, ¶¶ 55-56. Apple agreed to and did take all these affirmative steps to enforce ATTM's exclusivity in exchange for a share of ATTM's supra-competitive profits on iPhone voice and data services. EOR at 56, ¶ 57. To call Apple "inactive" disregards the well-pled facts alleged in the Complaint.

### 4. ATTM's Absence Does Not Expose Apple To Multiple Judgments Or Inconsistent Obligations

ATTM is not a necessary party under Rule 19(a)(B)(ii) because its continued absence would not subject Apple to any risk of inconsistent obligations. There is no basis for Apple's argument, asserted below, EOR 64, that Apple could incur inconsistent obligations to ATTM



[10] Apple's argument is factually unsupportable. Apple relied upon the Declaration of Eddy Cue in Support of Defendant Apple Inc.'s Motion to Dismiss ("Cue Decl.") (EOR at 73)

But "[a] written contract must be read as a whole and every part interpreted with reference to the whole." *Shakey's,*

---

[10]    With minor exceptions inapplicable here, illegal agreements are void under California law. *See, e.g., Asdourian v. Araj*, 38 Cal. 3d 276, 291 (1985) ("'the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice between the parties.'") (internal quotation omitted).

*Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983). ██████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ Accordingly, Apple cannot

meet its heavy burden of proof under Rule 12(b)(7).[11]



<hr />

[11]    A motion to dismiss under Rule 12(b)(7) is fact specific. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citing *Provident Tradesmens*, 390 U.S. at 118-19). The moving party bears the burden of proof in support of its Rule 12(b)(7) motion. *Shermoen*, 982 F.2d at 1317 (citing *Makah Indian Tribe*, 910 F.2d at 558 ("moving party has the burden of persuasion in arguing for dismissal")); *Oculus*, 2007 U.S. Dist. LEXIS 8288, at *6 (citing *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999)).

[12]  

Additionally, Apple would have no liability to ATTM if Apple alone is held liable to Plaintiffs and the Class in this action. Apple is not "more liable" in ATTM's absence, nor would it be "less liable" in ATTM's presence. Apple will not suffer any prejudice from ATTM's absence in this case.

For these reasons, Apple has not proven any genuine risk that it will incur inconsistent obligations to Plaintiffs and to ATTM.

## C.    ATTM's Joinder May Not Be Feasible

Even if ATTM were a necessary party, as a practical matter it may not be joined in the manner envisioned by Rule 19 because it will immediately move to compel arbitration of the claims against it. Since the District Court granted a motion to compel arbitration by ATTM in *Apple I*, 826 F. Supp. 2d 1168, it is likely to compel arbitration as to ATTM in this case as well.[13] Thus, if ATTM were joined as a defendant, it likely would be dismissed for improper venue. *See Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*, 417 F.3d 727 (7th Cir. 2005) (case dismissed for improper venue because forum selection clause in contract required arbitration outside of district); *Valley Power Sys. v. Gen. Elec. Co.*, CV 11-10726

_____

[13]    Plaintiffs acknowledge, however, that joining ATTM may prove feasible if the Supreme Court affirms *Amex* and upholds the Second Circuit's decision that, in proper cases, arbitration clauses may not be enforceable if individual arbitration would be cost-prohibitive for the plaintiff. *See* note 2, *supra*.

CAS (JCx), 2012 U.S. Dist. LEXIS 26228 (C.D. Cal. Feb. 27, 2012) (same); *Metro. Life Ins. Co. v. O'Malley*, 392 F. Supp. 2d 1042, 1045 (N.D. Ill. 2005) (granting motion to dismiss for improper venue under Rule 12(b)(3) because proper venue was before arbitrator). Because ATTM objects to being sued in court and insists that individual claims against it must be arbitrated (and the District Court has agreed), ATTM's joinder may not feasible under Rule 19(a)(3).

### D. ATTM Is Not An "Indispensable" Party Under Rule 19(b)

If the Court concludes that ATTM is a necessary party, because it cannot be joined as a defendant, it must also consider whether ATTM is "indispensable" under Rule 19(b). Because "equity and good conscience" do not prevent this action from continuing without ATTM, it is not "indispensable." *See Bowen*, 172 F.3d at 688. The District Court, having found ATTM to be a necessary party under Rule 19(a), did not reach this analysis under Rule 19(b).

To determine whether a party is indispensable, Rule 19(b) requires that a Court to:

> determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> >
> > (2) the extent to which any prejudice could be lessened or avoided by:

>     (A)   protective   provisions   in   the   judgment;
>
>     (B)   shaping the relief; or
>
>     (C)   other measures;
>
>   (3) whether a judgment rendered in the person's absence would be adequate; and
>
>   (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4). Each of these factors indicates that ATTM is not an indispensable party.

As to the first factor, as Plaintiffs have shown in Section VI.B.3.a. above, any judgment against Apple rendered in ATTM's absence will not prejudice ATTM or impair its interests since it cannot be used against ATTM in any subsequent court or arbitration proceeding. Apple cannot seek contribution from ATTM in this antitrust case. Nor would Plaintiffs or any other iPhone consumer be able to use an adverse judgment in this case against ATTM in a subsequent case because: (i) *res judicata* and collateral estoppel both require ATTM to have already litigated and lost in this action before any adverse judgment here can be used against it in a subsequent action, *see* note 8, *supra*; and (ii) Plaintiffs can recover all of their damages from Apple since Apple and ATTM are jointly and severally liable. This latter reason is also why a judgment against Apple in ATTM's absence would be fully adequate. *See* Section VI.B.1., *supra*. Thus, a

- 35 -

judgment rendered in ATTM's absence will not prejudice ATTM or the existing parties in the least and will be fully adequate. *See* Fed. R. Civ. P. 19(b)(1) and (3).

Apple's argument in the District Court that ATTM is "indispensable" because any injunction supposedly would need to prevent ATTM from selling locked iPhones is specious. Cellular phones are regularly sold "locked," and unlock codes are routinely provided to purchasers after the sale is complete. Also, an injunction compelling Apple to release the unlock codes to all purchasers will remedy prior locked iPhone sales by ATTM as well as by Apple.[14]

Apple's argument in the District Court that because ATTM is the alleged monopolist at the center of this case, an adverse finding regarding ATTM's scienter in this action purportedly would prejudice it or impair its interests, ignores the inability of anyone, including Apple, to use such a finding against ATTM in any subsequent action or arbitration since ATTM is not a party here and Apple cannot seek contribution. *See* Section VI.B.1., *supra*.

Finally, Apple's vague, conclusory assertion before the District Court that an adverse judgment here would harm ATTM's business interests is unavailing. To be protected under Rule 19, an interest "must be more than a financial stake, and more than speculation about a future event." *Makah Indian Tribe*, 910 F.2d at 558.

---

[14] Since 2009, iPhones have been sold at major retailers such as Radio Shack, Best Buy and Walmart. Tellingly, Apple has *not* argued that those retailers are also "indispensable" parties, even though its flawed rationale would apply to them as well.

Apple does not explain how ATTM's business interests would be harmed or even attempt to make any showing that such harm is likely. As explained above, even the Eleventh Circuit's *Laker Airways* case involved unique facts that are not present here; a judgment against Apple will not threaten ATTM's existence.

ATTM's decision to seek arbitration in *Apple I* and the near certainty that it would do so again if joined here is conclusive evidence that it has no business interest to protect by becoming a party in this action. *Rose*, 34 F.3d at 908 (party's voluntary dismissal is "best evidence that [his] absence would not impair or impede his ability to protect his interests"). Moreover, any co-conspirator theoretically could experience the same vague, generalized business harm that Apple presumes ATTM might suffer here whenever a plaintiff successfully sues another co-conspirator under the antitrust laws. But as explained previously, an antitrust plaintiff has an absolute right to sue only one conspirator for all the harm caused by the conspiracy.

The other Rule 19(b) factors are also in Plaintiffs' favor. First, with no potential prejudice to ATTM through this litigation, there is no need to determine whether the District Court could mitigate such prejudice. *See* Fed. R. Civ. P. 19(b)(2). However, if prejudice is found, District Courts have numerous means at their disposal to do so. *See Thomas, Head and Greisen Emps. Trust v. Buster*, 95 F.3d at 1460 n.18 (the "district court was able to craft appropriate and meaningful

- 37 -

relief in the absence of Westwood") (citation omitted); *Occidental*, 331 F. Supp. at 106 (court could shape relief to prevent prejudice to absent parties' interests by establishing a constructive trust).

Second, as discussed above, there is no question that a judgment rendered in ATTM's absence would be adequate, *see* Fed. R. Civ. P. 19(b)(3), because Plaintiffs can recover all of their damages from Apple.

Finally, Plaintiffs may not have an adequate remedy should the District Court's decision dismissing the case stand. *See* Fed. R. Civ. P. 19 (b)(4). Because the District Court compelled arbitration of the plaintiffs' individual claims against ATTM and Apple in *Apple I*, 826 F. Supp. 2d 1168, unless the Supreme Court affirms the *Amex* case in a manner that is readily applicable to this case, *see* note 2, *supra*, dismissal of Plaintiffs' claims relating to Apple's monopolization of the iPhone voice and data services aftermarket will leave these Plaintiffs with no cost-effective forum in which to pursue such claims against either Apple or ATTM. When the cost of arbitrating a federal statutory claim is prohibitively expensive, individual arbitration is simply not an adequate remedy. The practical reality is that antitrust cases such as this, which "require[] the outlay of substantial financial

resources," are not amenable to arbitration. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 52 (1st Cir. 2006).[15]

These Plaintiffs' antitrust claims are no exception to the basic rules. These Plaintiffs have weighed the costs and risks and have concluded that they simply could not afford to bring this enormously expensive Section 2 aftermarket monopolization case as individual arbitrations against ATTM. Therefore, they validly exercised their right to sue only Apple in court.

## VII. CONCLUSION

Apple has failed to demonstrate that ATTM is a necessary party under Fed. R. Civ. P. 19(a), that joinder of ATTM would be feasible, or that ATTM is an indispensable party under Fed. R. Civ. P. 19(b). Accordingly, Plaintiffs request

---

[15] Antitrust cases require "an elaborate factual inquiry" that entails millions of dollars of attorneys' time and hundreds of thousands or millions of dollars in expert fees. *Id.* at 58. Without expert witness testimony, antitrust claims are "effectively precluded," and because the plaintiff's individual damages are extremely small compared to the huge cost of investigating and prosecuting an individual claim, "retaining expert witnesses is completely unrealistic and impractical on an individual claim basis." *Id.* Even though reasonable attorneys' fees are awarded to successful antitrust plaintiffs, few if any attorneys would risk investing the "large initial outlay in time and money" and lost "opportunity costs" required to investigate and prosecute a claim where the recovery "at most is a few thousand dollars. Then, factoring in the uncertainty of success, the appeal for an attorney to take on an individual plaintiff's antitrust claim shrinks even further." *Id.* at 59 & n.21.

this Court to reverse the District Court's Order and remand for further proceedings.

DATED:  May 1, 2013                    Respectfully Submitted,

                                       WOLF HALDENSTEIN ADLER
                                        FREEMAN & HERZ LLP
                                       MARK C. RIFKIN
                                       ALEXANDER H. SCHMIDT
                                       MICHAEL LISKOW

                                       _____/s/ Mark C. Rifkin_____
                                            MARK C. RIFKIN

                                       270 Madison Avenue
                                       New York, New York 10016
                                       Telephone: 212/545-4600
                                       Facsimile:  212/545-4677
                                       rifkin@whafh.com
                                       schmidt@whafh.com
                                       liskow@whafh.com

                                       WOLF HALDENSTEIN ADLER
                                        FREEMAN & HERZ LLC
                                       FRANCIS M. GREGOREK
                                       RACHELE R. RICKERT
                                       750 B Street, Suite 2770
                                       San Diego, California  92101
                                       Telephone:  619/239-4599
                                       Facsimile:  619/234-4599
                                       gregorek@whafh.com
                                       rickert@whafh.com

                                       Randall S. Newman
                                       RANDALL S. NEWMAN P.C.
                                       37 Wall Street, Penthouse D
                                       New York, NY  10005
                                       Telephone:  212/797-3737
                                       Facsimile:  212-797-3172

                                       Attorneys for Plaintiff-Appellant Zack Ward

- 40 -

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,142 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in Times New Roman type style, 14-point font.

DATED:  May 1, 2013                          Respectfully Submitted,

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
MARK C. RIFKIN
ALEXANDER H. SCHMIDT
MICHAEL LISKOW

          /s/ Mark C. Rifkin
          MARK C. RIFKIN

270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile:  212/545-4677
rifkin@whafh.com
schmidt@whafh.com
liskow@whafh.com

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
FRANCIS M. GREGOREK
RACHELE R. RICKERT
750 B Street, Suite 2770

San Diego, California  92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
gregorek@whafh.com
rickert@whafh.com

Randall S. Newman
RANDALL S. NEWMAN P.C.
37 Wall Street, Penthouse D
New York, NY  10005
Telephone:  212/797-3737
Facsimile:  212-797-3172

Attorneys for Plaintiff-Appellant Zack Ward

## STATEMENT OF RELATED CASES

Plaintiff Zack Ward is not aware of any related cases pending in this Court.

Apple3/19794v2

# APPENDIX

# RULE 19. REQUIRED JOINDER OF PARTIES

(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.

    (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject–matter jurisdiction must be joined as a party if:

      (A) in that person's absence, the court cannot accord complete relief among existing parties; or

      (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i) as a practical matter impair or impede the person's ability to protect the interest; or

        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

    (2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

    (3) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) WHEN JOINDER IS NOT FEASIBLE. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

    (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    (2) the extent to which any prejudice could be lessened or avoided by:

      (A) protective provisions in the judgment;

      (B) shaping the relief; or

      (C) other measures;

    (3) whether a judgment rendered in the person's absence would be adequate; and

    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) PLEADING THE REASONS FOR NONJOINDER. When asserting a claim for relief, a party must state:

    (1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

    (2) the reasons for not joining that person.

(d) EXCEPTION FOR CLASS ACTIONS. This rule is subject to Rule 23.

NOTES

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1937

*Note to Subdivision (a).* The first sentence with verbal differences (e.g., "united" interest for "joint" interest) is to be found in [former] Equity Rule 37 (Parties Generally—Intervention). Such compulsory joinder provisions are common. Compare Alaska Comp. Laws (1933) §3392 (containing in same sentence a "class suit" provision); Wyo.Rev.Stat.Ann. (Courtright, 1931) §89–515 (immediately followed by "class suit" provisions, §89–516). See also [former] Equity Rule 42 (Joint and Several Demands). For example of a proper case for involuntary plaintiff, see *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459 (1926).

The joinder provisions of this rule are subject to Rule 82 (Jurisdiction and Venue Unaffected).

*Note to Subdivision (b).* For the substance of this rule see [former] Equity Rule 39 (Absence of Persons Who Would be Proper Parties) and U.S.C., Title 28, §111 [now 1391] (When part of several defendants cannot be served); *Camp v. Gress*, 250 U.S. 308 (1919). See also the second and third sentences of [former] Equity Rule 37 (Parties Generally—Intervention).

*Note to Subdivision (c).* For the substance of this rule see the fourth subdivision of [former] Equity Rule 25 (Bill of Complaint—Contents).

### NOTES OF ADVISORY COMMITTEE ON RULES—1966 AMENDMENT

*General Considerations*

Whenever feasible, the persons materially interested in the subject of an action—see the more detailed description of these persons in the discussion of new subdivision (a) below—should be joined as parties so that they may be heard and a complete disposition made. When this comprehensive joinder cannot be accomplished—a situation which may be encountered in Federal courts because of limitations on service of process, subject matter jurisdiction, and venue—the case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action.

Even if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it through proper service of process. But the court can make a legally binding adjudication only between the parties actually joined in the action. It is true that an adjudication between the parties before the court may on occasion adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent recovery by the absent person. These are factors which should be considered in deciding whether the action should proceed, or should rather be dismissed; but they do not themselves negate the court's power to adjudicate as between the parties who have been joined.

*Defects in the Original Rule*

The foregoing propositions were well understood in the older equity practice, see Hazard, *Indispensable Party: The Historical Origin of a Procedural Phantom*, 61 Colum.L.Rev. 1254 (1961), and Rule 19 could be and often was applied in consonance with them. But experience showed that the rule was defective in its phrasing and did not point clearly to the proper basis of decision.

Textual defects.—(1) The expression "persons * * * who ought to be parties if complete relief is to be accorded between those already parties," appearing in original subdivision (b), was apparently intended as a description of the persons whom it would be desirable to join in the action, all questions of feasibility of joinder being put to one side; but it was not adequately descriptive of those persons.

(2) The word "Indispensable," appearing in original subdivision (b), was apparently intended as an inclusive reference to the interested persons in whose absence it would be advisable, all factors having been considered, to dismiss the action. Yet the sentence implied that there were interested persons, not "indispensable." in whose absence the action ought also to be dismissed. Further, it seemed at least superficially plausible to equate the word "indispensable" with the expression "having a joint interest," appearing in subdivision (a). See *United States v. Washington Inst. of Tech., Inc.*, 138 F.2d 25, 26 (3d Cir. 1943); cf. *Chidester v. City of Newark*, 162 F.2d 598 (3d Cir. 1947). But persons holding an interest technically "joint" are not always so related to an action that it would be unwise to proceed without joining all of them, whereas persons holding an interest not technically "joint" may have this relation to an action. See Reed, *Compulsory Joinder of Parties in Civil Actions*, 55 Mich.L.Rev. 327, 356 ff., 483 (1957).

(3) The use of "indispensable" and "joint interest" in the context of original Rule 19 directed attention to the technical or abstract character of the rights or obligations of the persons whose joinder was in question, and correspondingly distracted attention from the pragmatic considerations which should be controlling.

(4) The original rule, in dealing with the feasibility of joining a person as a party to the action, besides referring to whether the person was "subject to the jurisdiction of the court as to both service of process and venue," spoke of whether the person could be made a party "without depriving the court of jurisdiction of the parties before it." The second quoted expression used "jurisdiction" in the sense of the competence of the court over the subject matter of the action, and in this sense the expression was apt. However, by a familiar confusion, the expression seems to have suggested to some that the absence from the lawsuit of a person who was "indispensable" or "who ought to be [a] part[y]" itself deprived the court of the power to adjudicate as between the parties already joined. See *Samuel Goldwyn, Inc. v. United Artists Corp.*, 113 F.2d 703, 707 (3d Cir. 1940); *McArthur v. Rosenbaum Co. of Pittsburgh*, 180 F.2d 617, 621 (3d Cir. 1949); cf. *Calcote v. Texas Pac. Coal & Oil Co.*, 157 F.2d 216 (5th Cir. 1946), cert. denied, 329 U.S. 782 (1946), noted in 56 Yale L.J. 1088 (1947); Reed, supra, 55 Mich.L.Rev. at 332–34.

Failure to point to correct basis of decision. The original rule did not state affirmatively what factors were relevant in deciding whether the action should proceed or be dismissed when joinder of interested persons was infeasible. In some instances courts did not undertake the relevant inquiry or were misled by the "jurisdiction" fallacy. In other instances there was undue preoccupation with abstract classifications of rights or obligations, as against consideration of the particular consequences of proceeding with the action and the ways by which these consequences might be ameliorated by the shaping of final relief or other precautions.

Although these difficulties cannot be said to have been general analysis of the cases showed that there was good reason for attempting to strengthen the rule. The literature also indicated how the rule should be reformed. See Reed, supra (discussion of the important case of *Shields v. Barrow*, 17 How. (58 U.S.) 130 (1854), appears at 55 Mich.L.Rev., p. 340 ff.); Hazard, supra; N.Y. Temporary Comm. on Courts, First Preliminary Report, Legis.Doc. 1957, No. 6(b), pp. 28, 233; N.Y. Judicial Council, Twelfth Ann.Rep., Legis.Doc. 1946, No. 17, p. 163; Joint Comm. on Michigan Procedural Revision, Final Report, Pt. III, p. 69 (1960); Note, *Indispensable Parties in the Federal Courts*, 65 Harv.L.Rev. 1050 (1952); *Developments in the Law—Multiparty Litigation in the Federal Courts*, 71 Harv.L.Rev. 874, 879 (1958); Mich.Gen.Court Rules, R. 205 (effective Jan. 1, 1963); N.Y.Civ.Prac.Law & Rules, §1001 (effective Sept. 1, 1963).

*The Amended Rule*

New subdivision (a) defines the persons whose joinder in the action is desirable. Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. Clause (2)(i) recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of

the action in his absence. Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability. See Reed, supra, 55 Mich.L.Rev. at 330, 338; Note, supra, 65 Harv.L.Rev. at 1052–57; Developments in the Law, supra, 71 Harv.L.Rev. at 881–85.

The subdivision (a) definition of persons to be joined is not couched in terms of the abstract nature of their interests—"joint," "united," "separable," or the like. See N.Y. Temporary Comm. on Courts, First Preliminary Report, supra; Developments in the Law, supra, at 880. It should be noted particularly, however, that the description is not at variance with the settled authorities holding that a tortfeasor with the usual "joint–and–several" liability is merely a permissive party to an action against another with like liability. See 3 *Moore's Federal Practice* 2153 (2d ed. 1963); 2 Barron & Holtzoff, *Federal Practice & Procedure* §513.8 (Wright ed. 1961). Joinder of these tortfeasors continues to be regulated by Rule 20; compare Rule 14 on third–party practice.

If a person as described in subdivision (a)(1)(2) is amenable to service of process and his joinder would not deprive the court of jurisdiction in the sense of competence over the action, he should be joined as a party; and if he has not been joined, the court should order him to be brought into the action. If a party joined has a valid objection to the venue and chooses to assert it, he will be dismissed from the action.

Subdivision (b).—When a person as described in subdivision (a)(1)–(2) cannot be made a party, the court is to determine whether in equity and good conscience the action should proceed among the parties already before it, or should be dismissed. That this decision is to be made in the light of pragmatic considerations has often been acknowledged by the courts. See *Roos v. Texas Co.*, 23 F.2d 171 (2d Cir. 1927), cert. denied, 277 U.S. 587 (1928); *Niles–Bement–Pond Co. v. Iron Moulders, Union*, 254 U.S. 77, 80 (1920). The subdivision sets out four relevant considerations drawn from the experience revealed in the decided cases. The factors are to a certain extent overlapping, and they are not intended to exclude other considerations which may be applicable in particular situations.

The first factor brings in a consideration of what a judgment in the action would mean to the absentee. Would the absentee be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor? The possible collateral consequences of the judgment upon the parties already joined are also to be appraised. Would any party be exposed to a fresh action by the absentee, and if so, how serious is the threat? See the elaborate discussion in Reed, supra; cf. *A. L. Smith Iron Co. v. Dickson*, 141 F.2d 3 (2d Cir. 1944); *Caldwell Mfg. Co. v. Unique Balance Co.*, 18 F.R.D. 258 (S.D.N.Y. 1955).

The second factor calls attention to the measures by which prejudice may be averted or lessened. The "shaping of relief" is a familiar expedient to this end. See, e.g., the award of money damages in lieu of specific relief where the latter might affect an absentee adversely. *Ward v. Deavers*, 203 F.2d 72 (D.C.Cir. 1953); *Miller & Lux, Inc. v. Nickel*, 141 F.Supp. 41 (N.D.Calif. 1956). On the use of "protective provisions," see *Roos v. Texas Co.*, supra; *Atwood v. Rhode Island Hosp. Trust Co.*, 275 Fed. 513, 519 (1st Cir. 1921), cert. denied, 257 U.S. 661 (1922); cf. *Stumpf v. Fidelity Gas Co.*, 294 F.2d 886 (9th Cir. 1961); and the general statement in *National Licorice Co. v. Labor Board*, 309 U.S. 350, 363 (1940).

Sometimes the party is himself able to take measures to avoid prejudice. Thus a defendant faced with a prospect of a second suit by an absentee may be in a position to bring the latter into the action by defensive interpleader. See *Hudson v. Newell*, 172 F.2d 848, 852 mod., 176 F.2d 546 (5th Cir. 1949); *Gauss v. Kirk*, 198 F.2d 83, 86 (D.C.Cir. 1952); *Abel v. Brayton Flying Service, Inc.*, 248 F.2d 713, 716 (5th Cir. 1957) (suggestion of possibility of counterclaim under Rule 13(h)); cf. *Parker Rust–Proof Co. v. Western Union Tel. Co.*, 105 F.2d 976 (2d Cir. 1939) cert. denied, 308 U.S. 597 (1939). See also the absentee may sometimes be able to avert prejudice to himself by voluntarily appearing in the action or intervening on an ancillary basis. See *Developments in the Law*, supra, 71 Harv.L.Rev. at 882; Annot., *Intervention or Subsequent Joinder of Parties as Affecting Jurisdiction of Federal Court Based on Diversity of Citizenship*, 134 A.L.R. 335 (1941);

*Johnson v. Middleton*, 175 F.2d 535 (7th Cir. 1949); *Kentucky Nat. Gas Corp. v. Duggins*, 165 F.2d 1011 (6th Cir. 1948); *McComb v. McCormack*, 159 F.2d 219 (5th Cir. 1947). The court should consider whether this, in turn, would impose undue hardship on the absentee. (For the possibility of the court's informing an absentee of the pendency of the action, see comment under subdivision (c) below.)

The third factor—whether an "adequate" judgment can be rendered in the absence of a given person—calls attention to the extent of the relief that can be accorded among the parties joined. It meshes with the other factors, especially the "shaping of relief" mentioned under the second factor. Cf. *Kroese v. General Steel Castings Corp.*, 179 F.2d 760 (3d Cir. 1949), cert. denied, 339 U.S. 983 (1950).

The fourth factor, looking to the practical effects of a dismissal, indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible. See *Fitzgerald v. Haynes*, 241 F.2d 417, 420 (3d Cir. 1957); *Fouke v. Schenewerk*, 197 F.2d 234, 236 (5th Cir. 1952); cf. *Warfield v. Marks*, 190 F.2d 178 (5th Cir. 1951).

The subdivision uses the word "indispensable" only in a conclusory sense, that is, a person is "regarded as indispensable" when he cannot be made a party and, upon consideration of the factors above mention, it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it.

A person may be added as a party at any stage of the action on motion or on the court's initiative (see Rule 21); and a motion to dismiss, on the ground that a person has not been joined and justice requires that the action should not proceed in his absence, may be made as late as the trial on the merits (see Rule 12(h)(2), as amended; cf. Rule 12(b)(7), as amended). However, when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person (subdivision (a)(2)(ii)), and is not seeking vicariously to protect the absent person against a prejudicial judgment (subdivision (a)(2) (i)), his undue delay in making the motion can properly be counted against him as a reason for denying the motion. A joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time. Thus the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced. Cf. Rule 12(d).

The amended rule makes no special provision for the problem arising in suits against subordinate Federal officials where it has often been set up as a defense that some superior officer must be joined. Frequently this defense has been accompanied by or intermingled with defenses of sovereign community or lack of consent of the United States to suit. So far as the issue of joinder can be isolated from the rest, the new subdivision seems better adapted to handle it than the predecessor provision. See the discussion in *Johnson v. Kirkland*, 290 F.2d 440, 446–47 (5th Cir. 1961) (stressing the practical orientation of the decisions); *Shaughnessy v. Pedreiro*, 349 U.S. 48, 54 (1955). Recent legislation, P.L. 87–748, 76 Stat. 744, approved October 5, 1962, adding §§1361, 1391(e) to Title 28, U.S.C., vests original jurisdiction in the District Courts over actions in the nature of mandamus to compel officials of the United States to perform their legal duties, and extends the range of service of process and liberalizes venue in these actions. If, then, it is found that a particular official should be joined in the action, the legislation will make it easy to bring him in.

Subdivision (c) parallels the predecessor subdivision (c) of Rule 19. In some situations it may be desirable to advise a person who has not been joined of the fact that the action is pending, and in particular cases the court in its discretion may itself convey this information by directing a letter or other informal notice to the absentee.

Subdivision (d) repeats the exception contained in the first clause of the predecessor subdivision (a).

**NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT**

The amendments are technical. No substantive change is intended.

**COMMITTEE NOTES ON RULES—2007 AMENDMENT**

The language of Rule 19 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 19(b) described the conclusion that an action should be dismissed for inability to join a Rule 19(a) party by carrying forward traditional terminology: "the absent person being thus regarded as indispensable." "Indispensable" was used only to express a conclusion reached by applying the tests of Rule 19(b). It has been discarded as redundant.